## Howell's Estate.

*Wills — Exercise of power of appointment — Blending estates—Transfer inheritance tax—Act of June 20, 1919.*

1. Where the donee of a power in his own will expresses the intention to exercise the power, and directs that the property subject thereto "shall be disposed of as in this will directed in conjunction with" his own estate, and then, after giving several legacies, gives his residuary estate to collaterals who are lineal descendants of the donor of the power, he thereby blends his individual estate and the estate subject to the power so that the whole passes to his own executors, notwithstanding the fact that his individual estate is sufficient to pay all his creditors and legatees.

2. In such case, the legacies to collaterals of the donee of the power, although grandchildren of the donor, are subject to the 10 per cent. tax imposed by the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, upon gifts to collaterals.

Exceptions to adjudication. (Fourth account of the trustees.) O. C. Phila. Co., July T., 1889, No. 46.

The relevant clauses of the will and the facts appear from the following extract from the adjudication of the auditing judge (VAN DUSEN, J.) :

"This account was called for audit Feb. 20, 1924.

"Counsel appeared as follows: James F. Hagen, Esq., for the accountant; Louis B. Runk, Esq., for Howell R. Hanson and Lillian C. Hanson; Abraham Berkowitz, Esq., for the Commonwealth of Pennsylvania.

"William Howell died April 20, 1889, leaving a will dated Feb. 12, 1889. The account of his executors was duly audited and a fund awarded to the trustees under his will for the purposes of the trust created by the residuary clause thereof, which is the subject of the present account filed by the surviving trustees. As shown by former adjudications, all legacies under his will have been paid and all annuitants have died.

"The provisions of the will creating the trust direct the executors and trustees, after providing for certain annuities, to divide the estate into as many equal parts as the testator had children living at the time of his death, and issue of children deceased, who should represent the parent as if they took from the parent under the intestate laws; and as to the shares represented by the living children, in trust to pay the net income to each of these children for life, and upon the death of each child to pay over such share as the child by will should appoint, and in default of such will, in trust for his children on terms which are not material here.

"The testator left surviving him eight children, of whom four have died. The disposition of the shares of three of them is not material, as the fund now before the court represents the balance of the trust fund held for the benefit of the five other children (one of whom has now died, as will presently be set forth) and their appointees and the persons entitled in default of appointment.

"Certain facts set forth in the petition for distribution are supplemented by agreement of counsel hereto attached. They are as follows:

"One of the children, William H. G. Howell, died July 23, 1922, leaving a will dated June 10, 1921, duly probated at Philadelphia, on which letters tes-

4 D. & C.

tamentary were granted to Howell R. Hanson, Lillian H. Hanson and Fidelity Trust Company, executors. By this will he provided:

" 'First. I direct the payment of my just debts and funeral expenses by my executors, hereinafter named, as soon as conveniently may be after my decease.

" 'Second. Whereas, by the will of my father, William Howell, who departed this life April 20, 1889 (and on whose will letters testamentary were granted to Isabel T. Howell and the Fidelity Insurance, Trust and Safe Deposit Company), I was given a power of appointment over a certain portion of his estate held or to be held in Trust under the terms of his said will, Now, I do declare that it is hereby my intention to exercise the said power, and I do hereby appoint, will and direct that the property over which I have the said power of appointment shall be disposed of as is in this will directed in conjunction with my own estate.'

"William H. G. Howell then gave his furniture, etc., specifically and a fund to produce an income of $4000 a year for his widow, with remainder to his nephew and niece; and he gave certain money legacies aggregating several thousand dollars. He then directed:

" 'Eighth. All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever nature and wheresoever situate, I give, devise and bequeath unto Howell R. Hanson and Lillian H. Hanson equally, absolutely and in fee.'

"The account of the executors of William H. G. Howell's will was filed, and by the adjudication of Judge Gummey (October Term, 1922, No. 679), it appears that his individual estate, after the payment of creditors, was sufficient to pay all the legacies bequeathed by his will and also to provide a fund which the accountants were willing to accept, and did accept, as being sufficient to provide for the yearly payment of $4000 to his widow. This fund proved sufficient for the purpose, and the widow has died.

"This account of the trustees under the will of William Howell is filed because of the death of William H. G. Howell, and one-fifth of the principal . is to be distributed.

"Howell R. Hanson and Lillian H. Hanson, mentioned in the residuary clause of the will of William H. G. Howell, were the nephew and niece of William H. G. Howell, being the children of his sister, Anna J. H. Hanson, and the grandchildren of William Howell, the decedent.

"Distribution is asked by Howell R. Hanson and Lillian H. Hanson direct to themselves, without passing through the hands of the executors of William H. G. Howell, on the ground that they are claiming the fund as part of the estate of William Howell, and that the will of William H. G. Howell is a document exercising the power of appointment contained in the will of William Howell, but collateral to that will, directing part of his estate to them, and that they do not take as legatees of William H. G. Howell.

"The Commonwealth, on the other hand, claims that by the language of the will of William H. G. Howell the property over which he had a power of appointment under the will of William Howell was blended with his own estate and was reduced to possession for all purposes of the will; that his residuary legatees take what is left of the two estates, considered as a whole; and that, therefore, a transfer inheritance tax is due to the Commonwealth upon the fund so passing, at the rate of 10 per cent., citing McCord's Estate, 276 Pa. 459.

"If it is decided that the appointed property passes as that of William H. G. Howell, and that the tax is payable, Howell R. Hanson and Lillian H.

Hanson then ask (as appears by the brief of their counsel) that the appointed estate be awarded to the executors of William H. G. Howell's will, as it will be subject to the executors' commissions and any other necessary expenses, and the tax be reduced by that much.

"As William H. G. Howell's debts and pecuniary legacies have been paid, then—if there were no blending of the two estates—awards might well be made direct to the appointees of William H. G. Howell, as was done in Huddy's Estate, 236 Pa. 276, which is discussed below.

"I think that payment of transfer inheritance tax on this fund is compelled by the decision in McCord's Estate, 276 Pa. 459. In that case John D. McCord gave a life estate to his daughter Ella, with power of appointment by will. Ella McCord by her will provided:

" '1. It is my intention by this my will to dispose not only of all estate and property which I own or hold in my own right, but also all over which I have any power of appointment, and especially that devised or bequeathed by the will of my father, John D. McCord, and it is my further intention that the entire estate and property shall be administered by my executors hereinafter named for the purpose of carrying out the provisions of my will.

" '2. I order and direct that my just debts and funeral expenses be paid by my said executors.'

"This is followed by numerous pecuniary legacies to relatives and others, totaling $55,500.

"She left an estate of her own and some debts, and the appointed fund was paid to her executors. On the audit of their account, tax was claimed on the whole and was allowed. After referring to the general rule that appointed property does not pass as the property of the donee, the Supreme Court went on:

" 'Here, however, Ella McCord's power of appointment by will being unlimited, she could transfer the trust fund to her own estate, and did so in unmistakable language, making it a part thereof for all purposes. Her intent to do so is emphasized by the fact that her will makes no further mention of the power or trust fund. It thus becomes blended with her other property as one estate, from which debts and legacies were payable. Not one of the numerous pecuniary bequests is payable from any particular fund. She makes the trust fund a part of her own estate and then distributes the whole to the objects of her bounty, who take as her legatees. While Ella McCord was not the owner of the *corpus* of the trust fund in her lifetime, she was the owner of the power, which she exercised, of making it a part of her estate at her death. To hold otherwise would restrict an unrestricted power of appointment.'

"In the present case the donee of the power, after declaring that he intended to exercise the power, directed: 'That the property over which I have the said power of appointment shall be disposed of as is in this will directed in conjunction with my own estate.' This language is no weaker than that in Ella McCord's will, and presents an even better picture of blending as the result of the exercise of the power.

"It is argued on behalf of the beneficiaries, however, that it is not necessary to resort to the appointed property to pay the debts and legacies of William H. G. Howell, and as he must have known it would not be necessary to do so, he must have intended that the appointed estate should pass only under the provisions of the residuary clause of the will; that that clause alone is to be construed as an exercise of the power; and that there is, therefore, no blending of the appointed estate with his own estate.

4 D. & C.

Howell's Estate.

"Counsel refers to the following cases: Com. *v.* Duffield, 12 Pa. 277, and Com. *v.* Williams's Executors, 13 Pa. 29, which establish the general rule that an appointed estate passes as the property of the donor of the power. But they are not cases in which the testator showed an intention of blending the two estates, and, therefore, the point arising in McCord's Estate and in the present case was not touched upon.

"Lederer *v.* Pearce, 266 Fed. Repr. 497, was decided in 1920 and concerns Federal estate tax. The court said that the decision must follow Pennsylvania law; but further concluded: 'The doctrine of 'blending,' upon which alone the plaintiff relies in this case, has not, so far as we have been informed, been passed upon by the Supreme Court of Pennsylvania.' The court, therefore, rejected the doctrine. Since then, McCord's Estate has adopted the doctrine as the law of Pennsylvania, where the testator so intends. The same observation can be made as to the adjudication by this court in Pearce's Estate, April Term, 1918, No. 260. In Baugh's Estate, October Term, 1894, No. 196, the question was only one of marshalling. It was held that legacies of the donee of the power should be paid out of her individual estate, in order that the residuary legatee might be paid out of the estate of the donor of the power, whose grandson he was, rather than out of the estate of the donee of the power, whose nephew he was. The possible blending of the two estates such as occurred in McCord's Estate was not noticed.

"Huddy's Estate, 236 Pa. 276, seems to have given the suggestion which is the basis of the argument. It was a fact in that case that the individual estate was enough to pay debts and legacies; but that was not what prevented blending. What prevented the latter was, that the donee of the power did not direct payment of her debts and did not mention the power at all. It was the Act of June 4, 1879, P. L. 88, which made the will operate as an execution of the power. The Supreme Court first decided that there was no blending, and then came in the matter of practice as to whether it was necessary to award the fund to the executors of the donee of the power in order to carry out her will, or whether it was practicable to make the award directly to the beneficiaries. Their language is: 'It is not an instance where the donee of the power either expressly or by implication appointed the fund for the payment of her debts, nor did she so blend the fund with her own assets that it is impracticable to pay directly to her appointees. So far as the record shows, there is no difficulty in making the payments directly to those now entitled to take under the will of Emma Huddy, as designated in the will of the donee of the power.'

"A short-cut direct to the beneficiaries was, therefore, allowed, because no purpose was to be served by having it go through the hands of the executors; but a short-cut will not avoid the toll-gate.

"In the present case, the direction that the appointed estate should be disposed of in conjunction with the individual estate of William H. G. Howell cannot be carried out except by paying it to his executors.

"It was forcibly argued by Mr. Hagen that the present case differs materially from McCord's Estate, in that there is no direction such as was contained in that case 'that the entire estate and property shall be administered by my executors hereinafter named, for the purpose of carrying out the provisions of my will;' and that the language of Howell's will, 'that the property over which I have the said power of appointment shall be disposed of as is in this will directed in conjunction with my own estate,' should be construed as if the latter part of it read, 'shall be disposed of as in this will directed concerning (or as to) my own estate.' That is to say, there is no

gift to the executors, and the reference to the distribution of his own estate is only (to quote counsel) 'used as a sort of index-finger to indicate how the estate shall be distributed, and not to combine the two estates into one.' I think, however, that the proposed reading of the words 'in conjunction with' is forced, and that they should be read with their natural meaning. So read, these words show an intention to blend the two estates, though the executors are not expressly directed to administer the appointed estate.

"Indeed, it would seem as though the same result ought to be reached even if there had been no direction to dispose of the appointed estate 'in conjunction with my own estate.' In McCord's Estate the Supreme Court declared that their decision found support in Stokes's Estate, 20 W. N. C. 48. In that case the testator gave his residuary estate, including that over which he had a power of appointment under the will of his grandfather, to certain persons, and he expressly mentioned the power. He did not give the appointed estate to his executors for administration. The court (Penrose, J.) said: 'In the present case, the estate passing under the power has been blended with that belonging to the donee in his own right, and the appointment is of a residue only. As this implies a previous administration of the fund, and the payment thereout of debts, etc., the award must be to the executrix of the will of the donee, and not directly to the ultimate appointee.'

"The decision in Huddy's Estate was based on the requirements of practice, and not on any supposed intent of the testator arising from the relation between the amount of his legacies and the amount of his own estate. No unexpressed intention to charge his legacies only upon his own estate can be inferred from the accidental result that debts and legacies *could* be paid without resorting to the appointed estate; and it is his intention which governs the matter. When the testator makes his will, he cannot know how the final distribution of his estate will work out. The facts of the present case give an example. The whole of his own individual estate was reserved to pay the annuity of $4000 to his widow, and it was agreed that this was sufficient. But the auditing judge remarks in his adjudication of the account of the executors that the fund was less than he would have set aside for that purpose but for the agreement.

"It has recently been said in Reel's Estate, 272 Pa. 135, with regard to a conversion of real estate: 'The only theory on which the change into personalty could be sustained would rest on an absolute necessity to sell for the purpose of paying debts and legacies. It is argued that, in view of the small amount of personalty, the testatrix must have been conscious of the fact that the sale of her lands would be required; from this, an intention that this be done is inferred. 'The question of conversion is to be determined from the will itself, and is not affected by the accidental fact that the personal estate may prove insufficient for the payment of the legacies:' Chamberlain's Estate, 257 Pa. 113. The necessity must have been contemplated in order that the scheme of the will could be carried out, and not be merely a necessity as a matter of fact arising out of the actual circumstances of the estate after death.'

"The same considerations should apply to 'blending.' Were this not so, the absurd result would be reached that, if even a few dollars out of the appointed estate turn out in the end to be necessary to pay debts and expenses and money legacies, the whole estate would become blended with the individual estate, and, therefore, subject to transfer inheritance tax; but if the balance is the other way, no such result would follow.

4 D. & C.

"Indeed, the provisions of the residuary clause of a will are just as much a part of the testator's intention as his money legacies, and more so than the payment of his debts. Legacies are to be paid before residue, but all, so far as he expresses himself, is to be paid out of the two funds regarded as one.

"As the transfer inheritance tax to the Commonwealth is payable, award is to be made to the executors of the will of William H. G. Howell, the beneciaries having so requested. Upon the filing of their account, transfer inheritance tax may be claimed by the Commonwealth.

"A copy of the will of William Howell is hereto annexed.

"There was no objection to the account, which shows a balance of principal, $732,460.64, which, composed as indicated by the account, is awarded, four-fifths thereof to Fidelity Trust Company and Isabel Howell Gest, trustees under the will of the testator for Anna J. H. Hanson, Kate H. McCreary, Isabel Howell Gest and Ella H. Armistead, and the remaining one-fifth to Howell R. Hanson, Lillian H. Hanson and Fidelity Trust Company, executors of the will of William H. G. Howell, deceased.

"The account of income shows a balance of $88,938.80, which, subject to payments already made on account of distribution, is awarded: One-fifth thereof to Anna J. H. Hanson; one-fifth to Kate H. McCreary; one-fifth to Isabel Howell Gest; one-fifth to Ella H. Armistead; and the remaining one-fifth to Howell R. Hanson, Lillian H. Hanson and Fidelity Trust Company, executors of the will of William H. G. Howell, deceased."

Howell R. Hanson and Lillian H. Hanson filed exceptions.

*Louis B. Runk,* for exceptants; *Abraham Berkowitz,* contra.

THOMPSON, J., May 26, 1924.—William Howell, deceased, by his will gave a portion of his estate to his trustees to pay the income therefrom to his son, William H. G. Howell, for life, with power of appointment by will, which the son exercised in language as follows:

"Second. Whereas, by the will of my father, William Howell, who departed this life April 20, 1889 (and on whose will letters testamentary were granted to Isabel T. Howell and The Fidelity Insurance, Trust and Safe Deposit Company), I was given a power of appointment over a certain portion of his estate held or to be held in Trust under the terms of his said will, Now, I do declare that it is hereby my intention to exercise the said power, and I do hereby appoint, will and direct that the property over which I have the said power of appointment shall be disposed of as is in this will directed in conjunction with my own estate."

And then proceeded to give several legacies, and, after creating a trust for his wife for life, gave his residuary estate to his nephew, Howell R. Hanson, and his niece, Lillian H. Hanson, both being grandchildren of William H. Howell, deceased.

At the audit of the fourth account of the trustees under the will of William Howell, deceased, it was shown that William H. G. Howell's individual estate, after the payment of creditors, was sufficient to pay all the legacies bequeathed by his will, and also to provide a fund which the accountants were willing to accept, and did accept, as being sufficient to provide for the yearly payment of $4000 to his widow. Said annuity fund proved sufficient for this purpose. His widow, Katherine V. Howell, subsequently died June 24, 1923.

The auditing judge held that by the second paragraph of the will of William H. G. Howell, deceased, quoted above, there was such a blending of the appointed estate with his own as to make the rule in McCord's Estate, 276 Pa. 459, apply, and awarded that portion of the estate of William Howell,

Howell's Estate.

deceased, over which William H. G. Howell had the power of appointment to the executors of the latter's will, with leave to the Commonwealth of Pennsylvania to present a claim for transfer inheritance tax thereon upon the settlement of said executors' account, to which ruling Howell R. Hanson and Lillian H. Hanson filed exceptions, and the same are now before us.

As we are of opinion that the auditing judge correctly applied the rule laid down in McCord's Estate, 276 Pa. 459, to the facts before him, all exceptions to his adjudication in so doing are dismissed. See, also, Forney's Estate, 280 Pa. 282.